IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

IN RE: DONALD AND STACEY LODEN, Debtor         No. 6:15-bk-70159
                                                Ch. 13

**OPINION AND ORDER CONFIRMING MODIFIED PLAN**

Before the Court are the debtors' Modification of Chapter 13 Plan filed on March 6, 2017 [doc. 64]; the trustee's and Arvest Bank's [Arvest] objections to the modification [docs. 77 and 71, respectively]; the debtors' Amended Motion For Authority to Incur Debt [doc. 95] filed on March 7, 2017; the trustee's response to the motion [doc. 100]; and Arvest's objection to the motion [doc. 103].  By agreement of the parties, the Court heard both of the debtors' pleadings on May 18, 2017.  For the reasons stated below, the Court overrules Arvest's objection to the debtors' modified plan [doc. 71] and its objection to the debtors' motion to incur debt [doc. 103].  The Court also overrules the trustee's objection to the modified plan [doc. 77] as moot; the trustee's objection was based on Arvest's objection to the debtors' motion to incur debt, which the Court overrules with this order.  The Court acknowledges the trustee's response to the debtors' motion to incur debt [doc. 100] and finds that it is best described as a conditional approval by the trustee; the debtors shall file an amended budget within 30 days from the date of this order reflecting the debtors' obligations contained in their modified plan, which the Court confirms with this order.

**Jurisdiction**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(L).  The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014.

**Background**

The debtors filed their voluntary chapter 13 petition and plan on January 21, 2015. Arvest filed an objection to the debtors' plan on February 9, 2015, and the trustee filed two objections to the debtors' plan, on March 5, 2015, and on April 28, 2015. Resolution of the objections resulted in an amended plan filed by the debtors on July 13, 2015, which the Court confirmed on August 5, 2015. Under the terms of the confirmed plan, the debtors would pay to the trustee $605 per month, of which $320 would be paid by the trustee to Arvest for a 2010 Chevrolet Equinox debt. Also under the terms of the plan, the unsecured creditors would be paid pro rata.

On March 6, 2017, the debtors filed a modified plan pursuant to 11 U.S.C. § 1329. Under the modified plan, which is the plan currently before the Court, the debtors proposed to surrender the Equinox and treat any deficiency that Arvest might have after liquidating its collateral as an unsecured debt to be paid pro rata with the other unsecured creditors. The debtors also proposed to reduce their monthly plan payment from $605 per month to $260 per month, a reduction of $345 per month. This is the approximate amount currently being paid to Arvest, plus the trustee's fee, for the Equinox under the debtors' confirmed plan.

On March 20, 2017, the trustee objected to the modification because he could not determine the feasibility of the proposed plan due to the pending Arvest objection to the debtors' motion for authority to incur debt. Although the trustee announced to the Court prior to the hearing that the trustee's objection would be sustained and the debtors would have 30 days to amend the plan, for the reasons stated below, the Court overrules the trustee's objection as moot.[1]

---

[1] Because an order had already been entered memorializing the trustee's and the debtors' settlement, the Court set aside its order for the debtors to modify their plan on May 22, 2017 [doc. 107].

On March 9, 2017, Arvest objected to the modification stating that the modified plan "does not comply with the applicable provisions of Title 11 of the United States Bankruptcy Code, and more specifically, does not comply with the provisions of 11 U.S.C. 1301, et seq." No further specificity was given by the bank concerning the alleged noncompliant provisions, nor was the Court able to glean under what provision Arvest may have been arguing. Arvest also argued that the debtors' current confirmed plan is *res judicata* concerning Arvest's secured claim on the Equinox. It stated that the debtors "should still be required to pay Arvest Bank's allowed secured claim in the amount of $13,800.00 in full over the remaining life of the plan." However, Arvest cited no authority for this proposition and its *res judicata* argument is contrary to the provisions of § 1329: Modification of Plan After Confirmation. Finally, Arvest stated that the modification is "not in the best interest of the debtors, creditors, and the bankruptcy estate" and that the plan does not allow for "fair and equitable treatment" of Arvest's secured claim on the Equinox. Because of this, Arvest argued that its interest in the Equinox is not adequately protected and confirmation of the modified plan should be denied.

On March 7, 2017, the debtors filed a motion for authority to incur debt to purchase another vehicle. Because the vehicle they were interested in buying was sold prior to their motion being granted, the debtors filed an amended motion to incur debt on May 5, 2017, that simply listed their proposed terms for the purchase of a vehicle: not to exceed $16,998 in amount at 17.61% for 72 months.[2]

On May 8, 2017, the trustee responded and stated that "[w]hile the Trustee does not necessarily oppose the motion," the debtors should provide to the trustee information about any tax penalties that may be incurred based on the debtors withdrawing funds

---

[2] The Court notes that these terms would require a payment of approximately $384 per month, just slightly above the reduced amount proposed to be paid to the trustee in the debtors' modified plan.

from a retirement account and should provide an amended budget to establish feasibility of the modified plan. On May 15, 2017, Arvest also objected to the motion for authority to incur debt, arguing that surrendering the Equinox under the proposed modified plan and incurring new debt would not be in the best interest of the debtors, creditors, and bankruptcy estate, and would place the debtors in "a worse financial condition than when they initiated this bankruptcy."

**Motion For Authority to Incur Debt**

It is customary in this state for debtors to bring before the Court their motions to incur debt after a chapter 13 plan has been confirmed. With the prior approval of the chapter 13 trustee, the Court typically will enter its order granting the debtor's motion, recognizing that the order is more of a "comfort order" than a dictate of the Court. In actuality, an order from the Court is not required unless the debtor is a debtor is "engaged in business" under § 1304–then an order would be appropriate. Comparing a debtor "engaged in business" with a debtor not so engaged is instructive.

Under § 1304, a chapter 13 debtor engaged in business has the rights and powers of a trustee to (1) use, sell, and lease property of the estate in the ordinary course of the debtor's business under § 363(c) or (2) incur debt or obtain credit under § 364. As a debtor engaged in business, a chapter 13 debtor could utilize § 364(b), (c), or (d) and, after notice and a hearing and court authorization, obtain post-petition credit. 11 U.S.C. § 364; *In re Fields*, 551 B.R. 424, 426-27 (Bankr. D. Minn. 2016). There is no comparable requirement for a debtor *not* engaged in business, such as the debtors in the case before the Court. In fact, one court compares the requirements under § 1304 for a debtor engaged in business with the "statutory silence with respect to those debtors who are not 'engaged in business' . . . ." *In re Fields*, 551 B.R. at 427. To extend the requirements of § 1304 and § 364 to a debtor not engaged in business would render § 1304 superfluous. *Id*.

In a case in which the debtor is not a debtor engaged in business, if a creditor holds a

4

post-petition "consumer debt . . . for property or services necessary for the debtor's performance under the plan," that creditor can seek allowance of the claim under § 1305. 11 U.S.C. § 1305(a)(2). However, that claim could be disallowed if the creditor "knew or should have known that *prior approval by the trustee* of the debtor's incurring the obligation was practicable and was not obtained." 11 U.S.C. § 1305(c) (emphasis added). With the trustee's prior approval of the claim, the debtor could then amend his plan if he wanted to and provide for the payment of the post-petition claim under § 1322(b)(6). *In re Fields*, 551 B.R. at 427.[3] Through this statutory framework, a debtor has the ability to obtain post-petition debt without court authorization. *Id.* However, approval by the trustee would be required if the debtor intended to make payments to the post-petition creditor under his plan. Regardless, if the debtor opted to modify his confirmed plan–either to reflect payments being made "outside the plan," or to bring the new creditor into the plan–the provisions of § 1329 would apply.

In this instance, the trustee does not "necessarily" oppose the debtors' motion but he would like additional information concerning the debtors' potential tax liability and would like to see an amended budget "to establish the feasibility of the plan" if the motion is approved. The debtors are already operating under a plan that the Court determined was feasible and confirmed on August 5, 2015. To the extent incurring this obligation of additional debt necessitates the modification of the previously confirmed plan by either adding a post-petition creditor, surrendering collateral previously provided for by the plan, or changing the plan payment, the provisions found under § 1329 control. Because the trustee does not oppose the motion, the Court finds that the requirement for trustee approval prior to incurring the obligation was obtained for purposes of § 1305.

Arvest did not merely respond to the debtors' motion for authority to incur debt, it

---

[3] Alternatively, the debtor could incur the post-petition obligation and provide for payments to the creditor "outside the plan" after modifying his confirmed plan to reflect a commensurate reduction for a class previously provided for by the plan, as discussed below. 11 U.S.C. § 1329(a).

5

objected to the motion. However, the Court is not able to find a companion provision in the code that either requires the prior approval of a creditor or that allows a creditor to object to the debtors' motion, especially when the debtors are currently operating under a confirmed plan in which the creditor is provided for. Arvest's arguments that incurring the debt would not be in the best interest of the debtors, creditors, and bankruptcy estate, and would place the debtors in "a worse financial condition than when they initiated this bankruptcy" are, perhaps, better reserved for its objection to the debtors' proposed modification. Hence, the Court overrules Arvest's objection to the debtors' motion for authority to incur debt.

**Modification of Chapter 13 Plan**

Both the trustee and Arvest objected to the confirmation of the debtors' modified plan. However, the trustee's objection was based on Arvest's objection to the debtors' motion for authority to incur debt, which the Court has overruled. Accordingly, the Court overrules the trustee's objection to confirmation as moot. Arvest objected to the modification for three reasons: (1) non-compliance with the provisions of chapter 13 (without giving any specific examples), (2) the doctrine of *res judicata* as it relates to the debtors' confirmed plan, and (3) that the modification is "not in the best interest of the debtors, creditors, and the bankruptcy estate" and that the plan does not allow for "fair and equitable treatment" of Arvest's secured claim on the vehicle. Arvest also argued that it was not "adequately protected." The Court will address each of these concerns below.

**11 U.S.C. § 1329**

Modification of a confirmed chapter 13 plan is allowed under § 1329, which makes §§ 1322(a), 1322(b), 1323(c), and 1325(a) applicable to any modification. 11 U.S.C. § 1329. Section 1329 states that a debtor may modify a confirmed plan to do one of the following:

> (1)  increase or reduce the amount of payments on claims of a particular class provided for by the plan;

6

> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>
> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) . . . .

11 U.S.C. § 1329(a).

Even though the specific criteria set forth in § 1329(a) does not require it, some courts have included an additional requirement that the modification be necessitated by a substantial change in circumstances. *Johnson v. Fink* (*In re Johnson*), 458 B.R. 745, 748 (B.A.P. 8th Cir. 2011) (stating that right to modify has been interpreted by some courts as limited to substantial change in circumstances); *In re White*, 482 B.R. 905, 916 (Bankr. W.D. Ark. 2012) (stating that debtor must prove substantial change that affects ability to make payments that was unanticipated); *In re Hutchison*, 449 B.R. 403, 406 (Bankr. W.D. Okla. 2011) (recognizing "a difference of opinion on the subject" of demonstrating a substantial unanticipated change in circumstances). Most of these cases, however, deal with an increase (or decrease) in the debtor's proposed plan payments. The *Johnson* court, an Eighth Circuit Appellate Panel, cited two circuit court opinions in support of this additional requirement: *Murphy v. O'Donnell* (*In re Murphy*), 474 F.3d 143 (4th Cir. 2007) and *Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir. 1997).

In *In re Murphy*, the Fourth Circuit relied on its earlier precedent in stating that *res judicata* prevents the modification of a confirmed plan unless "the party seeking modification demonstrates that the debtor experienced a 'substantial' and 'unanticipated' post-confirmation change in his financial condition." *In re Murphy*, 474 F.3d 143, 149 (4th Cir. 2007) (citing *In re Arnold*, 869 F.2d 240, 243 (4th Cir.1989)). Unlike the present case in which the debtors have requested the modification, in *In re Murphy*, the chapter 13 trustee moved for modification of the debtor's plan to increase the amount

paid to unsecured creditors. Likewise, in *In re Arnold*, a creditor moved for modification of a plan based on an increase in the debtor's income. Both cases related to modifications proposed by parties other than the debtors as a result of an increase in funds that could potentially be paid into the plan. It was against that background that the Fourth Circuit in *In re Murphy* found that the party seeking the modification of a debtor's payments had the burden of proving an unanticipated and substantial change in the debtor's financial condition to overcome the *res judicata* effect of a confirmed plan.

The *Arnold* court, relying on the Eighth Circuit case, stated that a "substantial change in the debtor's financial condition after confirmation may warrant a change in the level of payment." *In re Arnold*, 869 F.2d at 241-42 (citing *In re Zellner*, 827 F.2d at 1226). The specific phrase to which both the *Arnold* court and the *Johnson* court cited states that "[i]f, in the future, EAC can show a substantial change in Zellner's ability to pay, it may request modification of the plan." *In re Zellner*, 827 F.2d at 1226 (dicta). In *In re Zellner*, EAC was a creditor and Zellner was the debtor. In other words, the Eighth Circuit also recognized that the creditor would have the burden of proving a substantial change in the debtor's ability to pay into a confirmed plan if the creditor requested a modification of the debtor's confirmed plan payments.

The Court could find only two other circuit courts that have ruled on this issue. Neither of those circuit courts require a substantial change in the debtor's financial condition as a threshold requirement to modify a confirmed plan, relying instead on the plain language of § 1329. *Barbosa v. Solomon*, 235 F.3d 318 (1st Cir. 2000) (holding that a showing of substantial and unanticipated change in debtor's financial circumstances not required in applying § 1329); *In re Witkowski*, 16 F.3d 739 (7th Cir. 1994) ("The clear and unambiguous language of § 1329 negates any threshold change in circumstances requirement . . . ."). The modification of the debtors' confirmed plan that is before this Court is not based on a change in the debtors' ability to pay more (or less) into their plan. Therefore, the Court will not impose an additional requirement of a substantial change in

the debtors' financial condition to the statutory requirements found under § 1329(a).[4]

The debtors' modification to surrender the Equinox and treat any deficiency as an unsecured claim is permitted under § 1329(a)(1) and (a)(3). Subsection (a)(1) allows modification of a confirmed plan to reduce the amount of payments on claims of a particular class that is provided for by the plan. 11 U.S.C. § 1329(a)(1). Because each secured creditor has distinct rights in different items of collateral, each secured creditor is regarded as a separate class in chapter 13. *In re Jones*, 538 B.R. 844, 849 (Bankr. W.D. Okla. 2015); *In re Hutchison*, 449 B.R. at 408-09. In this case, Arvest is a particular class that is provided for in the plan and the debtors are proposing to reduce Arvest's claim from a secured claim to an unsecured claim by surrendering Arvest's collateral and reducing Arvest's secured claim to zero. Subject to the incorporated applicable provisions under § 1329(b), the Court finds that this modification is allowable. *In re Jones*, 538 B.R. at 849 (citing numerous cases in support); *In re Hutchison*, 449 B.R. at 408.

Subsection (a)(3) allows modification of a confirmed plan to alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan. 11 U.S.C. § 1329(a)(3). The debtors' first confirmed plan proposed that the debtors retain the Equinox and pay its value to Arvest over the life of the plan. They now propose to surrender the vehicle and have Arvest liquidate the collateral and apply the proceeds to its claim. Application of the proceeds in such a way would be a payment not previously contemplated under the plan. Again, subject to the incorporated applicable provisions under § 1329(b), the Court finds that this modification to account for the additional distribution to Arvest–in the form of surrendered collateral–is allowable. *In re*

---

[4] The Court is not holding that an unanticipated substantial change in circumstances affecting a debtor's ability to pay would not be considered in a case that presented different facts.

*Hutchison*, 449 B.R. at 409.

Now that the Court has determined that modification under § 1329(a) is appropriate, it must determine whether the debtors have proposed a plan that meets the standard for confirmation under the incorporated provisions within § 1329(b).  There are three provisions of particular relevance to the debtors' modified plan.  First, the debtors have proposed to surrender their interest in the Equinox, presumably in satisfaction of Arvest's secured interest in the vehicle.  Section 1322(b)(8) allows for the payment of all or part of a claim with property of the estate or of the debtor.  This provision "plainly and unequivocally contemplates that surrender of collateral is a form of payment."  *Id.*  Related to § 1322(b)(8) is § 1325(a)(5)(C), which states one of the three options a debtor has regarding the treatment of a secured claim under a plan.  Subsection (5)(C) allows a debtor to surrender the property securing an allowed secured claim to the holder of the claim.  The debtors' proposed surrender of the Equinox satisfies the confirmation requirement under § 1325(a)(5).  *Id.*  And, finally, § 1323(c) states that a holder of a secured claim is deemed to have accepted any modification "unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification . . . ."  11 U.S.C. § 1323(c).  This subsection makes clear that a debtor has a right to modify a plan to change the treatment of creditor under the terms of the plan by allowing for the creditor whose rights are being modified to object to the modification.  Although this section refers only to modifications made pre-confirmation, it is made applicable by specific reference in § 1329(b).  *In re Hutchison*, 449 B.R. at 408.  The debtors' modified plan does not violate any of these provisions by modifying the treatment of Arvest's claim.

Another relevant provision is that a modified plan must comply with the "good faith" requirement found under § 1325(a)(3): "the plan has been proposed in good faith and not by any means forbidden by law."  This provision applies to modified plans under § 1329 and allows a court to "protect against abusive manipulation of the Code or abusive treatment of creditors."  *In re Jones*, 538 B.R. at 849.  If, for example, a debtor fails to

insure a vehicle and it is damaged or the debtor has otherwise abused a vehicle and accelerated its useful life, a creditor would be able to object to the debtor's subsequent modification and proposal to surrender a vehicle by applying the good faith standard to the modification. *In re Hutchison*, 449 B.R. at 410. The Court finds that no such abuse has occurred in this case. The debtors have returned the vehicle to a dealer during their multiple attempts to repair the vehicle and appear to have kept the vehicle maintained. There is no indication that insurance on the vehicle ever lapsed and Arvest presented no evidence or testimony that the vehicle has depreciated any more than was provided for in the debtors' previously confirmed plan. The Court finds that the debtors have complied with the "good faith" requirement under § 1325(a)(3).

Finally, a modified plan must be feasible, in that the debtors will be able to make their payments under the plan and comply with the plan. 11 U.S.C. § 1325(a)(6). The Court has already determined that the debtors' current plan is feasible when it confirmed the plan on August 5, 2015. Arvest has asserted that modification of the plan would place the debtors in "a worse financial condition than when they initiated this bankruptcy." However, by reducing their proposed plan payments in an amount that is approximately the same as their current payment to Arvest plus the trustee fee, the debtors are not significantly changing their current financial obligation under their confirmed plan. Hence, the Court finds that the debtors' proposed modified plan is feasible under § 1325(a)(6). For the reasons stated above, the Court finds that modification of the debtors' confirmed plan is appropriate and authorized under § 1329.

### Res Judicata

Arvest has also argued that the doctrine of *res judicata* prevents the debtors from now amending their confirmed plan. Although Arvest did not provide any substance to its argument, the Court presumes its argument is based on the language of § 1327, which states that "[t]he provisions of a confirmed plan bind the debtor and each creditor . . . ." 11 U.S.C. § 1327. Read narrowly, this statute supports Arvest's argument. And the Court agrees that a confirmed plan is *res judicata* to issues related to the confirmed plan

that are unrelated to a proposed modification. *Mass. Hous. Fin. Agency v. Evora* (*In re Evora*), 255 B.R. 336, 343 (D. Mass. 2000) (finding that confirmed plan is considered *res judicata* as to claim valuation determinations). However, § 1329 specifically permits modification of a plan after a plan has been confirmed in certain limited situations and operates as a "limited exception to the res judicata effect of plan confirmation." *In re Hutchinson*, 449 B.R. at 407 (citing cases). Accordingly, because the debtors' proposed modification complies with the modification provisions under § 1329, the Court finds that the doctrine of *res judicata* is not applicable in this case.

**Adequate Protection**

Finally, Arvest has suggested that it would not be adequately protected if the debtors were allowed to modify their plan. The Court disagrees. As discussed above, the provisions of the modified plan comply with the incorporated provisions of § 1325(a); specifically, the debtors have proposed to surrender the property securing Arvest's claim to Arvest and treat Arvest's deficiency, if any, with the other unsecured creditors.[5] Adequate protection should have been a concern at the initial confirmation of the debtors' plan. At that time, to be confirmed, the plan would have to have provided payments to Arvest in an amount "sufficient to provide to the holder of claim [Arvest] adequate protection during the period of the plan." 11 U.S.C. § 1325(a)(5)(iii)(II). Presumably, Arvest has been being paid since the debtors' first amended plan was confirmed in 2015. During that time, to the present, Arvest has received payments sufficient to provide Arvest adequate protection. Surrender of the Equinox at this time

---

[5] If the debtors had proposed to surrender the Equinox yet still pay Arvest in full, as suggested by Arvest's adequate protection and *res judicata* arguments (and as offered by the debtors in counsel's opening statement), the debtors' plan could have been prejudicial to the other unsecured creditors being paid pro rata under the debtors' plan and subject to an objection by the trustee on behalf of those unsecured creditors. Additionally, "[w]hy would a debtor continue to pay for 'a dead horse,' or more accurately a surrendered or foreclosed home or car, as if she still owned it while being forced to find substitute housing or transportation? Forcing a debtor to make such a choice is antithetical to the rehabilitation goals of a Chapter 13." *In re Jones,* 538 B.R. at 850.

does not affect Arvest's "adequate protection": it is receiving the vehicle and, to the extent Arvest is undersecured, it may file a claim for any deficiency and be treated with the other unsecured creditors, which is exactly what the code provides.

Having resolved and overruled the objections to modification of the debtors' confirmed plan by Arvest and the trustee, the Court confirms the debtors' March 6, 2017 modified chapter 13 plan as proposed, including the provision that allows Arvest to file a claim for any deficiency upon liquidation of the vehicle and be properly treated as an unsecured creditor to be paid pro rata with the other unsecured creditors. The debtors shall file an amended budget within 30 days from the date of this order reflecting the debtors' obligations in their modified plan.

IT IS SO ORDERED.

                                              Ben Barry
                                              United States Bankruptcy Judge
                                              Dated: 05/26/2017

cc:    Joycelyn Bell, attorney for the debtors
        Donald and Stacey Loden, debtors
        Amanda Pace-Welch, attorney for the trustee
        Branch T. Fields, attorney for Arvest
        Jack W. Gooding, chapter 13 trustee